IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

COLONEL PRESTON LONG III,       *

     Plaintiff,          *

v.                   *      **Civ. No. DLB-25-175**

ANDREW MOULTRIE, *et al.*,      *

     Defendants.     *

## MEMORANDUM OPINION

Colonel Preston Long III, a prisoner currently incarcerated at Roxbury Correctional Institution who is proceeding without counsel, filed this civil rights action pursuant to 42 U.S.C. § 1983 against Dr. Andrew Moultrie, CRNP Bernard Alenda, RN Damon Fayall, Dr. Seyyed "Masoud" Djahanmir, Dr. Chifron, RN Amber Knoll, Medical Director Michelle, RN Brandy Shade, Dr. Rhozia, and an unnamed "[f]oreign Black [f]emale" nurse practitioner (Jane Doe).[1] Long alleges that the defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment to the United States Constitution. Knoll and Shade have filed a motion to dismiss or, in the alternative, for summary judgment. ECF 18. Dr. Moultrie, Alenda, Fayall, and Dr. Djahanmir also have filed a motion to dismiss or, in the alternative, for summary judgment. ECF 27. Long has filed a motion to appoint counsel, ECF 9, and a motion to collect/test evidence,

---

[1] The Clerk shall correct the defendants' names and Long's address on the docket. There are two additional errors on the docket. First, this case is captioned as *Long v. DPSCS et al.* However, Long's consolidated amended complaint does not name the Maryland Department of Public Safety and Correctional Services ("DPSCS") as a defendant. The Clerk therefore shall terminate DPSCS from the docket as a defendant. Second, the docket identifies Doe and Fayall as the same person. They are not. Doe, according to Long's allegations, is a female nurse, and Fayall is a man. Thus, the Clerk shall update the docket to reflect that Doe and Fayall are two separate defendants.

ECF 26. For the following reasons, the defendants' motions, construed as motions to dismiss, are granted, and Long's claims against all defendants are dismissed. Long's motions are denied.

## I. Background

### A. Long's Allegations

The following is from Long's consolidated amended complaint.[2]

On September 5, 2023, Long was assaulted by correctional officers at Patuxent Institution ("Patuxent"). ECF 6, at 2. Following this assault, Long was "[h]obbling" and a "[b]one [was] [p]rotruding [f]rom [his] left clavicle[.]" *Id.* at 2–3.

After the assault, Long was seen by Dr. Moultrie, a doctor at Patuxent. *Id.* at 2. Dr. Moultrie was aware of Long's protruding bone. *Id.* Dr. Moultrie told Long that "no [s]urgeon [was] going to want to operate on [his] shoulder" and that "it has to be shaven down[.]" *Id.* at 2–3. However, "no appointments [were] made for that" other than two x-rays at the Jessup Correctional Institution "regional [h]ospital." *Id.* at 3.

Between September 2023 and January 1, 2024, Long had several negative and/or unhelpful interactions with medical personnel. Long "pleaded" with Doe "about a[n] [i]ngrown[]hair in [his]

---

[2] Long has attached to his consolidated amended complaint various prison grievances, as well as responses from DPSCS officials. *See* ECF 6-1. Though these documents are part of Long's consolidated amended complaint, *see* Fed. R. Civ. P. 10(c), it is unclear whether Long has attached them for the purpose of elaborating on the allegations he makes in the body of his consolidated amended complaint or simply to show that he has exhausted his administrative remedies. Without more clarity on this question, it is not appropriate for the Court to consider the allegations in these grievances as true for purposes of ruling on the defendants' dispositive motions. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167 (4th Cir. 2016) (explaining that "where the plaintiff attaches or incorporates a document for purposes other than the truthfulness of the document, it is inappropriate to treat the contents of that document as true" and that "before treating the contents of an attached or incorporated document as true, the district court should consider the nature of the document and why the plaintiff attached it"). But even if the Court were to consider the allegations in these grievances as true, Long still would not state a claim against any of the defendants for deliberate indifference.

right nostril" that "block[ed] any air [f]low," but she told him there was "nothing we can do for you[.]" *Id.* Long also interacted with Alenda, who "seemed perplexed about [his] multiple injuries [and] overall medical condition, thus making communication a barrier." *Id.* Dr. Moultrie also "had [Long] blow in a tube in[]front of one or two" nurses, saw that his "breathing was low," and did "not mak[e] any steps to understand why." *Id.*

During this time, Long was suffering from "chronic issues" that affected his breathing, lower back, groin, and knees, as well as his left shoulder. *Id.* All he received were "weak medications" and "a shoulder exercise sheet[.]" *Id.* It also was recommended that Long not be handcuffed behind his back, but he nonetheless was cuffed repeatedly in this way over the course of a year and a half, which caused him pain. *Id.*

At some point, correctional staff directed Long to Fayall, who frustrated all Long's attempts to go to the hospital. *Id.* Long also asserts Dr. Moultrie coerced nurses to lie and deny that he needed medical attention. *Id.* at 3–4.

On January 1, 2024, Long was transferred to Western Correctional Institution ("WCI"). *Id.* at 4. The van ride to WCI took two and a half hours and was "[f]ast . . . [and] uncomfortable." *Id.* After the ride, Long "wasn't able to walk without a WCI correctional officer assisting" him, and he had to be brought to the housing unit in a wheelchair. *Id.* The ride impeded Long's mobility and has made it more difficult for him to climb stairs, "pivot," and carry the items that he buys from the prison commissary. *Id.* at 5–6.

Upon his arrival at WCI, Long told an intake officer and nurse about his condition and explained that he "couldn't defend [him]self." *Id.* at 4. They ignored him and housed him in general population. *Id.*

3

Long wanted to be seen by the medical department at WCI. *Id.* However, it took a long time for an appointment to be scheduled. *Id.* A nurse told him that the department was understaffed. *Id.* During his time at WCI, Long made sick calls, requested to go to an "[o]utside [h]ospital," and asked for "[m]edical [p]arole," but his requests "went ignored for months[.]" *Id.*

Long was eventually seen by WCI medical personnel, who performed x-rays, including one on the area below his waist. *Id.* Dr. Djahanmir had "a nurse quickly [f]unction the computer [and] tell [Long]" that he was "perfectly [f]ine," was "imagining things," and that it was "all in [his] head." *Id.*

Long later had another appointment with Dr. Djahanmir to address his "respiratory issues[.]" *Id.* at 5. During this appointment, Dr. Djahanmir appeared to have "had a change of heart[.]" *Id.* This time, Dr. Djahanmir acknowledged that Long had been assaulted in September 2023 and told him that he was "not imagining things" and "d[id] have chronic pain[.]" *Id.* Dr. Djahanmir said that he "[couldn't] lie" and "believe[d] God is the Greatest." *Id.*

After this appointment, Dr. Djahanmir allowed Long to walk back to his cell. *Id.* It was cold and raining, which "made [Long's] breathing problem instantly attack [him]." *Id.* Long "barely made it" to his cell, and when he arrived, he was on the verge of passing out. *Id.* Long "struggled so bad to breathe [that he] was shaking violently on [his] right side [and] holding onto the bunk bar with [his] left[.]" *Id.* Long "thought [he] might die[.]" *Id.* Long's respiratory problems made it difficult for him to "breathe in the shower." *Id.* Eventually, Long discovered that there was an ingrown hair in his throat, which was responsible for his respiratory issues. *Id.* He pulled out the hair himself. *Id.* Then he wrote to WCI medical personnel asking them "to make sure [his] throat problem [was] fixed," but they ignored him. *Id.*

On September 15, 2024, Long met with Dr. Chifron at Maryland Correctional Institution – Hagerstown. *Id.* at 6. Dr. Chifron was "very hostile" during this meeting. *Id.* Dr. Chifron "didn't hear [that Dr. Djahanmir] had changed the [n]arrative[.]" *Id.*

Eventually, Long was moved to Maryland Correctional Training Center ("MCTC"). At MCTC, Long experienced "[h]arassment/[p]ersonal abuse [and] [r]etaliation" from "MCTC staff[.]" *Id.* On October 15, 2024, Long met with Knoll, who saw "physically the poor condition [he] was in." *Id.* During this appointment, Knoll "had a smirk on her face." *Id.* Long "had to ask [Knoll] [two] or three times" for a drink of water. *Id.* Long states that Knoll "personalized her medical when I mentioned mines[.]" *Id.* Despite being "aware of [Long's] need [to] transfer" from MCTC due to the abuse and retaliation he was experiencing there, Knoll "only directed [Long] to Medical Director Michelle," which yielded "[n]o results," just "guessing [and] eyeballing of [Long's] medical condition." *Id.*

Long saw Dr. Rhozia twice. *Id.* Both times, "she witnessed [his] poor physical condition." *Id.*

On November 15, 2024, Long had an appointment with Shade, who assessed him. *Id.* At this point, Long "needed to go out 911" and was in "poor medical condition[.]" *Id.* Nevertheless, Shade was "coerced to lie about [Long] cursing at her," even though Long has "no history of disrespecting [m]edical or [p]rison [s]taff employees." *Id.*

Long states, "[i]n summary," that he suffers from severe and painful conditions about which "medical" has known for one and a half years. *Id.* at 7. These conditions include "[p]oor breathing, a bone popped out of its natural place, a serious cripple walk[,] . . . non-intentional contorting of [his] lower back," a "constant ripping" sensation in his groin, and "ingrown hairs." *Id.* He also has been diagnosed with post-traumatic stress disorder. *Id.* Nevertheless, he has been

provided only "weak medications [and] superficial treatment plans that have not been enacted at all." *Id.* He has been denied "[o]utside [h]ospitals, MRIs, [and] specialists." *Id.* He also has been placed in danger by being housed in general population, and his prison job puts "more strain on [his] injuries[.]" *Id.*

### B.    Procedural History

Long filed this suit on January 16, 2025. ECF 1. On March 21, 2025, Long filed another suit against the defendants. *See generally Long v. Moultrie et al.*, No. DLB-25-957 ("*Long II*"). On April 10, 2025, *Long II* was consolidated with this case, ECF 5, and the complaint in *Long II* was docketed as the operative consolidated amended complaint in this case, ECF 6. Long seeks $10 million in compensatory and punitive damages as well as various forms of injunctive relief, including "compassionate release," "uninterrupted, top notch medical" care outside of a prison, and "medical days" or "medical parole."[3] *Id.* at 8.

On May 6, 2025, Long filed a motion to appoint counsel. ECF 9.

On July 7, 2025, Knoll and Shade filed a motion to dismiss or, in the alternative, for summary judgment. ECF 18; *see* ECF 18-1 (mem. in supp.). Long opposes the motion. ECF 22.

On August 8, 2025, Long filed a motion to collect/test evidence. ECF 26.

On August 19, 2025, Dr. Moultrie, Alenda, Fayall, and Dr. Djahanmir filed a motion to dismiss or, in the alternative, for summary judgment. ECF 27. The motion is fully briefed. ECF

---

[3] In his complaint and filings, Long requests that this Court order his release. Such requests are not proper in this forum because this is not a habeas corpus case. "Habeas corpus, and not § 1983, is the exclusive federal remedy for state prisoners seeking actual release from confinement." *Griffin v. Balt. Police Dep't*, 804 F.3d 692, 694–95 (4th Cir. 2015).

27-1, 29 & 30.[4] No hearing is necessary to resolve the pending motions. *See* Loc. R. 105.6 (D. Md. 2025).

## II.    Standard of Review

Under Rule 12(b)(6), a party may seek dismissal for failure "to state a claim upon which relief can be granted." *Robertson v. Anderson Mill Elementary Sch.*, 989 F.3d 282, 290 (4th Cir. 2021) (quoting Fed. R. Civ. P. 12(b)(6)). To survive the challenge, the opposing party must have pleaded facts demonstrating it has a plausible right to relief from the court. *Lokhova v. Halper*, 995 F.3d 134, 141 (4th Cir. 2021) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). A plausible claim is more than merely conceivable or speculative. *See Holloway v. Maryland*, 32 F.4th 293, 299 (4th Cir. 2022). The allegations must show there is "more than a sheer possibility that the defendant has acted unlawfully." *Int'l Refugee Assistance Project v. Trump*, 961 F.3d 635, 648 (4th Cir. 2020) (quoting *Iqbal*, 556 U.S. at 678). But the claim does not need to be probable, and the pleader need not show "that alternative explanations are less likely" than their theory. *Jesus Christ Is the Answer Ministries, Inc. v. Baltimore Cnty.*, 915 F.3d 256, 263 (4th Cir. 2019) (quoting *Houck v. Substitute Tr. Servs., Inc.*, 791 F.3d 473, 484 (4th Cir. 2015)).

---

[4] Long also has filed a document titled "Response to Reply From the Contributors' (Law Firm of Defendants Moultrie . . .)," ECF 31, which the Court construes as a surreply. Under this Court's Local Rules, a surreply may not be filed "[u]nless otherwise ordered by the Court[.]" *See* Loc. R. 105.2(a) (D. Md. 2025). Long did not seek leave to file a surreply. Even if the Court were to construe Long's filing as a motion for leave to file a surreply, he does not identify any arguments raised for the first time in Dr. Moultrie's, Alenda's, Fayall's, and Dr. Djahanmir's reply to which he needs to respond. *See Tyson v. Capital One, N.A.*, No. DLB-25-1794, 2025 WL 3166795, at *3 (D. Md. Nov. 13, 2025) (A court may permit a surreply when a movant raises an issue for the first time in their reply."). Indeed, in the first sentence of his filing, Long states that he did not even read Dr. Moultrie's, Alenda's, Fayall's, and Dr. Djahanmir's reply. *See* ECF 31, at 1 ("I didn't even read pas[t] 'Reply,' I only care about what the District Court has to say!"). The Court will not consider ECF 31 in ruling on Dr. Moultrie's, Alenda's, Fayall's, and Dr. Djahanmir's motion.

When ruling on a Rule 12(b)(6) motion, the court must accept the allegations as true and "draw all reasonable inferences in favor of" the pleader. *Williams v. Kincaid*, 45 F.4th 759, 765 (4th Cir. 2022) (quoting *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016)). But the court does not accept "legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." *United States ex rel. Taylor v. Boyko*, 39 F.4th 177, 189 (4th Cir. 2022) (quoting *United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013)). Merely reciting a claim's elements "and supporting them by conclusory statements does not meet the required standard." *Sheppard v. Visitors of Va. State Univ.*, 993 F.3d 230, 234 (4th Cir. 2021) (quoting *ACA Fin. Guar. Corp. v. City of Buena Vista*, 917 F.3d 206, 212 (4th Cir. 2019)). The court "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Ray v. Roane*, 948 F.3d 222, 226 (4th Cir. 2020) (quoting *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013)).

The court's review of a Rule 12(b)(6) motion typically is limited to the pleadings, documents attached to the complaint, and the parties' briefs. *See* Fed. R. Civ. P. 12(b)(6), 12(d); *see also* Fed. R. Civ. P. 10(c). The court also may consider judicially noticed facts and documents integral to and explicitly relied on in the complaint when their authenticity is not disputed. *See Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606–07 (4th Cir. 2015); Fed. R. Evid. 201(b).

Long does not have counsel. "[P]ro se filings are 'h[e]ld to less stringent standards than formal pleadings drafted by lawyers.'" *Folkes v. Nelsen*, 34 F.4th 258, 272 (4th Cir. 2022) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). Accordingly, the court must construe pro se pleadings liberally. *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 618 (4th Cir. 2020). But "liberal construction does not require [the court] to attempt to 'discern the unexpressed intent of the plaintiff[;]'" the court need only "determine the actual meaning of the words used in the

8

complaint." *Williams v. Ozmint*, 716 F.3d 801, 805 (4th Cir. 2013) (quoting *Laber v. Harvey*, 438 F.3d 404, 413 n.3 (4th Cir. 2006) (en banc)). Thus, a pro se complaint "still 'must contain enough facts to state a claim for relief that is plausible on its face.'" *Thomas v. Salvation Army S. Territory*, 841 F.3d 632, 637 (4th Cir. 2016) (quoting *King*, 825 F.3d at 214).

## III.    Discussion

The United States Code provides a federal cause of action for any individual who believes a state actor has deprived them of a constitutional right. *See* 42 U.S.C. § 1983; *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 707 (1999). The statute "is not itself a source of substantive rights, but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Two elements are essential to state a claim under § 1983: (1) the plaintiff must have suffered a deprivation of "rights, privileges or immunities secured by the Constitution and laws" of the United States; and (2) the act or omission causing the deprivation must have been "committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 45 n.3, 48 (1988) (quoting 42 U.S.C. § 1983).

Long claims that all defendants were deliberately indifferent to his medical needs in violation of the Eighth Amendment. "The Eighth Amendment protects prisoners from 'unnecessary and wanton infliction of pain.'" *Thompson v. Virginia*, 878 F.3d 89, 97 (4th Cir. 2017) (quoting *Estelle v. Gamble*, 429 U.S. 97, 102 (1976)). Under the Eighth Amendment, the government must "provide medical care for those whom it is punishing by incarceration." *Estelle*, 429 U.S. at 103. To prevail on a claim based on the denial of medical care, a plaintiff must establish that the defendants' actions or their failure to act amounted to "deliberate indifference to serious medical needs." *See id.* at 106; *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). A prison medical provider is deliberately indifferent to a serious medical need if, objectively, the prisoner was suffering from a serious medical need and, subjectively, the provider, aware of the prisoner's need for medical attention, failed to either provide such care or to ensure care was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994). In other words, the provider must have been subjectively reckless in treating or failing to treat the medical condition. *See id.* at 839–40.

"True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F.3d 336, 340 n.2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met "through direct evidence of . . . actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence 'that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Makdessi v. Fields*, 789 F.3d 126, 133 (4th Cir. 2015)). If the requisite subjective knowledge is established, officials may avoid liability "if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also Cox v. Quinn*, 828 F.3d 227, 236 (4th Cir. 2016) ("[A] prison official's response to a known threat to inmate safety must be reasonable."). Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *See Brown v. Harris*, 240 F.3d 383, 390 (4th Cir. 2001) (citing *Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998)). "[N]egligence or malpractice on the part of . . . doctors

10

in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference[.]" *Johnson v. Quinones*, 145 F.3d 164, 166 (4th Cir. 1998). And, a "mere '[d]isagreement[] between an inmate and a physician over the inmate's proper medical care'" does not establish an Eighth Amendment violation "absent exceptional circumstances." *Scinto*, 841 F.3d at 225 (first alteration in *Scinto*) (quoting *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985)). Further, the inmate's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977)).

### A.    Claims Against Knoll and Shade

Knoll and Shade argue that Long fails to state a claim against them for deliberate indifference. The Court agrees.

The Court assumes for purposes of this analysis that Long has alleged that he had objectively serious medical needs. Nevertheless, Long fails to plausibly allege that Knoll or Shade disregarded those needs. Long alleges that he had an appointment with Knoll at which she observed his poor physical condition and behaved insensitively by smirking and making him ask multiple times before giving him a drink of water. But he does not allege that Knoll actually denied him any medical treatment that he needed. To the contrary, he alleges that she referred him to Medical Director Michelle. Although Long alleges that that referral ultimately proved unhelpful, that is not tantamount to deliberate indifference. Long does not allege any facts that would suggest that the way Knoll responded to his medical needs was unreasonable or negligent, let alone reckless.[5]

---

[5] Long also states that Knoll knew that he needed to transfer from MCTC because of the abuse and harassment he was experiencing but did not have him transferred. This allegation also is insufficient to state an Eighth Amendment claim. Long does not specify what sort of abuse or

As for Shade, Long alleges that he met with her a month after he met with Knoll, at which time he needed to go to the emergency room and was in visibly poor physical condition. The Court can thus infer that Shade was aware of Long's medical needs. But once again, Long does not actually allege that Shade denied him any of the treatment he needed. He does not say, for instance, that Shade failed to call 911 or to provide him with emergency treatment herself. Long merely states that at some point, Shade lied about him cursing at her. The Court cannot infer from this allegation that Shade disregarded Long's need for medical treatment.

Long's claims against Knoll and Shade are dismissed without prejudice.

**B.      Claims Against Dr. Moultrie, Alenda, Fayall, and Dr. Djahanmir**

Dr. Moultrie, Alenda, Fayall, and Dr. Djahanmir argue that Long fails to state a claim against them for deliberate indifference. The Court agrees.

Long alleges that "no appointments were made" to "shave down" his shoulder even though Dr. Moultrie told him that his shoulder would need to be "shave[d] down" and that no surgeon would want to operate on his broken clavicle. ECF 6, at 3. A broken clavicle is an objectively serious medical need, and Long plausibly alleges Dr. Moultrie was aware of this injury. But Long does not allege that Dr. Moultrie recklessly disregarded the risk that his broken clavicle posed. Long alleges no facts from which the Court could infer that Dr. Moultrie was responsible for the failure to make an appointment to shave down Long's shoulder. Long simply says no such appointments were made. He does not attribute this failure to Dr. Moultrie. Because Dr. Moultrie may be found liable only if he "acted personally in the deprivation of [Long's] rights," *Vinnedge*

---

harassment he experienced at MCTC, so the Court cannot infer that it amounted to an objectively serious risk to his health and safety. Nor does Long allege any facts that would suggest that Knoll, a nurse, had the power to transfer him to another facility or to influence those who did. Thus, the Court also cannot infer that Knoll's failure to have Long transferred was reckless.

*v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977) (quoting *Bennett v. Gravelle*, 323 F. Supp. 203, 214 (D. Md.), *aff'd*, 451 F.2d 1011 (4th Cir. 1971)), this pleading deficiency dooms Long's deliberate indifference claim against Dr. Moultrie.

Long's other allegations against Dr. Moultrie fare no better. Long alleges that Dr. Moultrie saw that his breathing was "low" but made no attempt to understand why. ECF 6, at 3. But Long does not explain what he means by "low" breathing. Without any additional details, the Court cannot infer that Long's "low" breathing constituted an objectively serious medical need. Long also alleges, in conclusory fashion, that Dr. Moultrie forced nurses to lie about Long's medical condition. But Long fails to support this serious accusation with any specific facts. Without more information, the Court cannot plausibly infer that Dr. Moultrie coerced medical staff to misrepresent Long's medical condition in such a manner as to be deliberately indifferent to Long's serious medical needs. Long fails to state a claim against Dr. Moultrie for deliberate indifference.

Long's allegations against Alenda are minimal. Long alleges that he struggled to communicate with Alenda about his medical issues because Alenda seemed "perplexed" by them. *Id.* Long does not allege that Alenda was aware of his medical needs; indeed, his allegations suggest the opposite. Nor does Long allege that Alenda failed to provide him with necessary treatment or to ensure that such treatment was available. Long fails to state a claim against Alenda for deliberate indifference.

Long's allegations against Fayall are similarly sparse. Long claims that he needed to go to a hospital and Fayall frustrated his attempts to do so. But he does not explain what Fayall knew about his conditions. Nor does he explain why treatment in a hospital was necessary—as opposed to simply more desirable than treatment in a prison. From Long's meager allegations, the Court cannot infer that Fayall knew about his medical needs or that Fayall's rejection of Long's requests

to go to a hospital amounted to a reckless failure to provide necessary medical treatment as opposed to a mere disagreement about the course of treatment. Long fails to state a claim against Fayall for deliberate indifference.

Long's allegations against Dr. Djahanmir also fall short. Long alleges that Dr. Djahanmir told him (or had a nurse tell him) that he was imagining things and that his medical condition was all in his head. If true, this may have been insensitive patient treatment, but it was not deliberate indifference to a serious medical need. On Long's account, Dr. Djahanmir told him he was imagining things after the doctor ordered x-rays, including an x-ray on the area below Long's waist. Long does not say that the x-rays revealed any broken bones. Nor does Long specify what, if any, other tests or procedures Dr. Djahanmir performed during this appointment, what the results of those tests or procedures were, or how Long presented to medical staff during this appointment. Long thus fails to plausibly allege that, when Dr. Djahanmir made (or had a nurse make) a dismissive comment, he knew that Long had an objectively serious medical need.

Nor do Long's allegations about Dr. Djahanmir's apparent "change of heart," *id.* at 5, make it plausible that Dr. Djahanmir acted with deliberate indifference. Long alleges that, at a later appointment to address his respiratory issues, Dr. Djahanmir acknowledged Long's chronic pain, told Long that he was not imagining things, said that he (Dr. Djahanmir) "[couldn't] lie," and expressed faith in God. *Id.* But these comments do not give rise to a plausible inference that Dr. Djahanmir was lying to Long when, at their previous appointment, he told him that his conditions were all in his head. First, there is no allegation that, when Long first saw Dr. Djahanmir, he saw him for chronic pain. Thus, the Court cannot plausibly infer that, when Dr. Djahanmir later told Long that he could not lie and that Long was not imagining *that he had chronic pain*, he was admitting an error in his prior medical assessment. Second, even if the Court could draw such an

14

inference, Dr. Djahanmir's statement that he "[couldn't] lie" does not plausibly suggest that he was deliberately indifferent to Long's chronic pain during the first appointment. Without more context, this statement is too thin a reed to support a plausible inference that Dr. Djahanmir ever acted recklessly in his treatment of Long's chronic pain.

Long also alleges that after his second appointment with Dr. Djahanmir, Dr. Djahanmir allowed Long to walk back to his cell in the cold and rain, which exacerbated Long's respiratory distress. But Long does not plausibly allege that Dr. Djahanmir knew that it was cold and raining outside, let alone that such conditions could make it harder for Long to breathe. Nor does Long allege that Dr. Djahanmir failed to treat him for his ensuing respiratory crisis. He thus provides no facts from which the Court could conclude that Dr. Djahanmir knew of and disregarded his serious medical needs. Long fails to state a claim against Dr. Djahanmir for deliberate indifference.

Long's claims against Dr. Moultrie, Alenda, Fayall, and Dr. Djahanmir are dismissed without prejudice.[6]

### C.   Claims Against Doe, Dr. Chifron, Medical Director Michelle, and Dr. Rhozia

No one has entered an appearance and responded to the complaint on behalf of Doe, Dr. Chifron, Medical Director Michelle, or Dr. Rhozia. Nevertheless, the Court must review the adequacy of Long's allegations against these defendants because Long has filed this suit without prepayment of the filing fee. *See* 28 U.S.C. §§ 1915(e)(2)(B)(i)–(ii), 1915A(b) (requiring dismissal of any complaint accepted without a prepaid filing fee that is frivolous, malicious, or fails to state a claim on which relief may be granted to guard against possible abuse of this privilege).

---

[6] In his oppositions to the motions to dismiss or for summary judgment, Long makes many new factual allegations against various defendants and other correctional personnel. Long cannot amend his complaint through opposition briefing. *See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC*, 713 F.3d 175, 184 (4th Cir. 2013). The Court does not consider any of these new allegations in ruling on the defendants' motions.

Long claims that he told Doe that an ingrown hair in his nostril blocked his airflow and that she told him that there was nothing that could be done. The Court assumes that Long's obstructed breathing constituted an objectively serious medical need. Even so, Long does not allege that Doe failed to examine him or to otherwise attempt to provide treatment before telling him that she could not help him. It also is not clear from Long's allegations whether Doe's alleged comment that there was "nothing we can do for you" reflected a wholesale refusal to take *any* steps to alleviate Long's respiratory distress or whether she simply meant that she could not remove the ingrown hair. On such sparse allegations, the Court cannot infer that Doe's comment reflected a reckless disregard for Long's medical needs. Long fails to state a claim against Doe for deliberate indifference.

Long's only allegation against Dr. Chifron is that Dr. Chifron treated him in a "hostile" manner during an appointment and possibly was skeptical of some of his medical needs. Long provides no additional details. He does not allege what Dr. Chifron knew about his conditions, nor does he allege that Dr. Chifron failed to provide him necessary treatment or ensure such treatment was available. Long fails to state a claim against Dr. Chifron for deliberate indifference.

Long alleges that he had an unhelpful interaction with Medical Director Michelle where she could only speculate what was wrong with him. But he does not plausibly allege that Medical Director Michelle knew of and recklessly disregarded a serious threat to his health and safety. Indeed, his allegations suggest the opposite—that Medical Director Michelle tried to identify his condition but could not. Long also does not allege that she failed to provide him with necessary treatment or to ensure that such treatment was available. Long fails to state a claim against Medical Director Michelle for deliberate indifference.

16

Finally, Long alleges that Dr. Rhozia observed him in poor physical condition on two separate occasions. He makes no other allegations against Dr. Rhozia. Simply witnessing someone's poor medical condition is not a basis for Eighth Amendment liability. Long does not allege that Dr. Rhozia failed to provide him with any necessary medical treatment or to ensure its availability. Long fails to state a claim against Dr. Rhozia for deliberate indifference.

Long's claims against Doe, Dr. Chifron, Medical Director Michelle, and Dr. Rhozia are dismissed without prejudice.

### D.      Long's Motions to Collect/Test Evidence and to Appoint Counsel

Long has filed a motion to collect/test evidence in which he appears to claim that he has been sexually and/or physically assaulted by one or more correctional officers and requests that the Court order that certain testing be done and certain evidence (such as security camera footage) be preserved. The relief Long requests does not relate to the allegations in his consolidated amended complaint, which concern alleged failures to provide medical care, not physical assault by correctional officers. If Long wants to file a separate lawsuit asserting claims against a correctional officer arising out of the alleged assault, he may do so. This motion is denied.

Long also requests appointment of counsel. In civil cases, a federal district court judge has the discretion under 28 U.S.C. § 1915(e)(1) to appoint counsel, but only if an indigent claimant presents exceptional circumstances. *See Cook v. Bounds*, 518 F.2d 779, 780 (4th Cir. 1975); *see also Branch v. Cole*, 686 F.2d 264, 266 (5th Cir. 1982). "Courts consider 'the type and complexity of the case,' whether the plaintiff has a colorable claim, and the plaintiff's ability to prosecute the claim." *Giddings v. Montgomery Cnty.*, No. GJH-21-959, 2021 WL 5921382, at *1 (D. Md. Dec. 15, 2021) (quoting *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct.*, 490 U.S. 296, 298 (1989)), *aff'd*, No. 22-6057, 2022 WL

17

1284296 (4th Cir. Apr. 29, 2022). Even though Long has not stated a claim, he demonstrated an ability to prosecute this suit. He opposed both dispositive motions, and his opposition to Dr. Moultrie's, Alenda's, Fayall's, and Dr. Djahanmir's motion is detailed and cites relevant caselaw. He also has filed multiple motions of his own. Moreover, this case is not particularly complex. It does not present exceptional circumstances warranting the appointment of counsel. Long's motion for appointment of counsel is denied.

## IV.    Conclusion

The motions to dismiss or, in the alternative, for summary judgment, construed as motions to dismiss, are granted. Long's claims against all defendants are dismissed without prejudice. Long's motions to collect/test evidence and to appoint counsel are denied. A separate Order follows.


Date: March 18, 2026

_____
Deborah L. Boardman
United States District Judge

18